No. 30,686.

D. E. MOORE, *Appellee*, v. THE WICHITA YELLOW CAB COMPANY, *Appellant*.

(12 P. 2d 736.)

Opinion filed July 9, 1932.

*Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston,* all of Wichita, for the appellant.

*L. P. Brooks, L. A. Hasty* and *James B. Nash,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by D. E. Moore to recover damages from the Wichita Yellow Cab Company for personal injuries caused by the alleged negligence of the defendant when it ran a cab upon him on a street of Wichita, which runs under elevated railroad tracks. He recovered damages in the sum of $2,950, and defendant appeals.

Plaintiff, aged about sixty-four years, left his place of business about eight o'clock in the evening and started to a place under the viaduct to board a street car in order to reach his home. When he entered under the viaduct he stopped for a moment waiting for the

passing of street cars and vehicles. The place was near the union station in a congested part of the city. In this subway there were walks on each side for pedestrians, a section in the center of the street was devoted to the use of street cars, and on each side of the center section and between it and the sidewalks ways were devoted to the use of motor and other vehicles, and there were two or three places in the subway where the street cars stopped to take on or discharge passengers. After watching for a break in the traffic plaintiff undertook to pass from the point of entrance across the traffic way, about twenty-five feet wide, to a place where he could board the street car. When he was about two-thirds of the distance across the traffic way the yellow cab came along, at a speed of twenty miles or more an hour, and struck the plaintiff, throwing him ten feet along the pavement and causing the injuries of which he complained.

It was found that the defendant's negligence consisted in the care-less operation of the taxicab; that is, a violation of a city ordinance and the failure to take proper precautions in driving in the subway, and also that the driver immediately before the accident could have come to a stop before reaching the point opposite the street-car landing or have fallen into the line of traffic more to the right, and thus have avoided the accident. Special interrogatories were submitted to the jury and answered as follows:

"1. Did the plaintiff as and at the time he started across the street, on the occasion in question, make a vigilant use of all his senses as far as there was opportunity to ascertain whether there was any present danger in crossing said street or whether any automobiles were approaching from the east? A. Yes.

"2. How far could the plaintiff in the place where he was crossing the street have seen the taxicab of the defendant as it was approaching the entrance to the subway? A. Considering the traffic towards the east as a barrier to his vision, he could have seen approximately sixty-six feet.

"3. How far was the defendant's taxicab from the place where the plaintiff was crossing the street at the time the plaintiff started across the street? A. We have no evidence as to the location of taxicab at the time when the plaintiff started across street.

"4. Was the plaintiff negligent in any manner in crossing the street on the occasion in question? A. No.

"5. If you answer the foregoing question in the affirmative, then state the act or acts of negligence committed by the plaintiff. A. ———

"6. If you answer the foregoing question in the affirmative, then state whether or not such negligence on the part of the plaintiff in anywise contributed to the accident. A. ———

"7. How fast was the taxicab of the defendant being driven as it entered the subway in question? A. In our judgment, twenty miles or more.

"8. How fast was it being driven at or immediately prior to the collision or accident in question? A. In our judgment, fifteen miles at least.

"9. Was L. L. Cox, the driver of the defendant's taxicab, negligent in the operation of said cab at or immediately prior to the time of the accident in question? A. Yes.

"10. If you answer the question immediately preceding in the affirmative, then state in detail the act or acts of negligence committed by the said Cox. A. Violated city ordinance. He did not take proper precaution before entering viaduct.

"10½. If you answer the foregoing question in the affirmative, then state whether or not such negligence on the part of the defendant in anywise contributed to the accident, or was the proximate cause thereof. A. It was.

"11. What, if anything, did L. L. Cox do, at or immediately following the time he discovered plaintiff was proceeding into the path of the taxicab, to avoid colliding with plaintiff? A. He slowed up somewhat.

"12. What, if anything, could L. L. Cox, driver of the defendant's taxicab, have done that he did not do immediately prior to the accident to have avoided the accident? A. He could have come to a stop just before reaching a point opposite street-car landing or falling in line of traffic more to the right.

"13. Had plaintiff suffered from any ailment or impairment prior to May 3, 1930? A. So far as evidence shows he suffered no pain or inconvenience that would incapacitate him from work prior to May 3, 1930. Evidence also shows that he did have an ailment prior to May 3, 1930, but such ailment did not affect his work.

"14. If you answer the question immediately preceding in the affirmative, then state the particular ailment or impairments from which he had suffered. A. Arthritis.

"15. State in detail the actual, if any, injury which plaintiff suffered as the result of the accident in question. A. Evidence shows that the plaintiff was struck a blow by a yellow taxicab, which threw him to the pavement, injuring his back to such an extent that he could not get about for three months, and still is not able to get about for any continued length of time."

Defendant is contending that the negligence was not established, that the collision was a result of plaintiff's contributory negligence, that the special questions were not fairly answered, that the court should have required more definite answers than were returned, that there was error in the instructions and that the verdict is excessive.

As to defendant's negligence in operating the car there is some conflict in the evidence, but a reading of it, including an examination of the exhibits showing the plan of the subway, leaves no doubt that there is evidence to support the finding of the jury as to defendant's negligence. It is unnecessary to set forth in detail and to analyze the volume of evidence contained in the abstracts. It appears to be abundant, under the rules which obtain here in an

appeal, to uphold the findings of the jury. The driver of the taxicab testified that he was driving slowly at the time of the accident, only seven or eight miles an hour; that he saw plaintiff in the middle of the traffic way when he was about sixty feet away from him, and although he says he retarded the speed of his cab, he ran upon the plaintiff. Other witnesses said he was running at a speed of twenty to twenty-five miles an hour through the congested place. The traffic way was about twenty-five feet wide and the driver failed to fall into the line of traffic, but turned out and drove fast through the narrow way. He did slow down just before he struck plaintiff, but, as the jury found, was then going at a speed of fifteen miles or more, and the jury found upon evidence that he could have avoided the accident by moving to the right in the line of traffic.

There is the further contention that plaintiff was guilty of contributory negligence in that he was familiar with the subway, had crossed the traffic way many times, knew that it was a main thoroughfare with street cars and vehicles continually passing both ways, and yet he walked leisurely across the traffic way and got at least two-thirds of the way across before he was struck. It is said that if plaintiff had waited an instant before starting or had hurried across after starting, there would have been no accident. The plaintiff testified that he was observing the situation in the subway when he entered it, that when he came down the concrete steps at the entrance he stopped and looked for street cars and vehicles passing, and as soon as he saw a break in the traffic he started across, thinking that he had plenty of time to cross, and had gotten two-thirds to three-fourths of the way across before he was struck. He first saw the taxicab when it was about sixty feet from him and made an effort to get across and out of the way, but the taxicab was coming at such a speed that he was unable to do so. His testimony as to his stopping and looking for an opportunity to cross, the fast speed of the taxicab and the circumstances of the accident, were substantiated by the testimony of an eyewitness who observed the circumstances of the collision.

It is manifest from the circumstances disclosed in the record that it cannot be held, as a matter of law, that plaintiff was guilty of contributory negligence. That was plainly a question for the jury, and we do not hesitate to hold that there was evidence to sustain the finding of the jury that plaintiff was not negligent, and therefore the finding cannot be disturbed on this appeal.

Besides contending that the special findings of the jury are not supported by the evidence, defendant contends that they are mere conclusions, not detailed nor definite enough, and should have been set aside. They have been set forth and appear to be candid and fairly reasonable answers to the questions propounded. This objection, we think, is without merit.

Complaint is made of instruction sixteen, wherein the court said:

"You are further instructed that, in case you find for the plaintiff, you will fix the amount of his recovery at such sum, not in excess of $2,950, as you think will compensate him in damages for the injury he sustained, and, in arriving at this amount, you are instructed that it is your duty to form an estimate of these damages with reference to the pecuniary injury which resulted or will result to the plaintiff by the injuries sustained by reason of the accident involved in this action; and you may estimate these pecuniary damages from the facts proved, in connection with your own knowledge and experience which you possess in common with the generality of mankind, and it is not necessary that any witness should have testified in this case expressing an opinion as to the amount of such pecuniary loss, for that is a matter which you alone can decide."

It is suggested that the plaintiff did not offer evidence of his earning capacity, and yet the jury were told that they might find the damages sustained upon their own knowledge and experience which they possess in common with the generality of mankind. It is to be noted that the court did advise the jury that they were to find the pecuniary loss from the facts proven in connection with their general knowledge and experience, and that it devolved upon the jury to determine the amount of damage sustained, if any. We see no material error in the instruction, and, besides, not all of the instructions given are preserved in the record.

The claim of defendant that the award of damages is excessive does not impress the court. In view of the testimony as to the nature and extent of the plaintiff's injuries, the amount allowed, $2,950, does not appear to be out of reason. Plaintiff was thrown a distance of ten feet upon the pavement and was disabled and confined to his room from May 3 to August 9, suffering from injuries in his back and hips, and was unable to do any work until September 15. Even after that time and up to the time of trial he was still suffering pain in his back, sides and hip and could stand on his feet for only a short time. It is said that his condition was due in part to arthritis which affected him and is not wholly attributable to the blow struck by the cab. As sometimes happens, the medical witnesses called by

the several parties did not agree in their testimony. Taking into consideration the proof in behalf of plaintiff, we cannot say the amount allowed shocks the conscience of the court and requires that a remittitur should be made. It is true, the testimony is meager as to the allowance of $50 for medical services. It was shown that the doctor called upon plaintiff from seven to ten times, but had not rendered a statement of his bill to the plaintiff at the time of the trial. He, therefore, had not paid anything yet for those services, but of course the obligation remains. He did show the number of calls made by the physician, and for this the small allowance of $50 was made. Under the circumstances we think the paucity of proof on this item should not be regarded as a ground for reversal or modification.

· The judgment is affirmed.