No. 33,169

R. L. HAMILTON, Administrator of the Estate of George L. Robertson, Deceased, *Appellant*, v. N. J. LANOUE, *Appellee*.

(67 P. 2d 574)

Opinion filed May 8, 1937.

*R. L. Hamilton,* of Beloit, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton,* all of Salina, *C. L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action for damages for wrongful death and for damages to the truck of the deceased, caused by the truck of the defendant, which was driven by him, striking the truck of the deceased.

The action was brought by the administrator of the deceased, and the amended petition alleged negligence on the part of the defendant and sought to recover damages in two counts: one for the wrongful death of the deceased, in the sum of $10,000, for the benefit of the three children and only heirs of the deceased, and the other for dam-

ages to the truck of the deceased in the sum of $800. The amended answer consisted of a general denial and allegations of contributory negligence on the part of the deceased and his agent, who was with him and driving the truck. The jury rendered a general verdict for the defendant and answered eighteen special questions submitted to it. After overruling several motions of the plaintiff, including a motion for a new trial, the court rendered judgment for the defendant, from which rulings and judgment the plaintiff appeals.

The first error assigned and argued by the appellant is the refusal of the trial court to set aside findings Nos. 1, 2 and 18 as not being supported by the evidence and being contrary to the law and the evidence in the case.

The first question called for three answers, (a), (b) and (c), but since they were all conditioned upon the jury finding for the plaintiff they should not have been answered when the verdict was for the defendant. They all relate to the allowance made by the jury for three different things, which are proper subjects for allowances in actions for damages for wrongful death, and on some of which there was evidence, and others would perhaps come under the rule expressed in *A. T. & S. F. Rld. Co. v. Weber, Adm'r,* 33 Kan. 543, 6 Pac. 877, of the wrongful injury importing a damage, and the heirs, although not dependents, being entitled to recover certain damages when the death was wrongful, as stated in *Marshall v. Miller Bros.,* 112 Kan. 706, 212 Pac. 883; *Berry v. Dewey,* 102 Kan. 593, 172 Pac. 27, and *Gas Co. v. Carter,* 65 Kan. 565, 70 Pac. 635. The answer to these three subdivisions of question No. 1 was, "Nothing." As stated before, they should not have been answered at all unless the general verdict was for the plaintiff, but appellant urges that the general verdict should not stand, and in that case these answers seriously affect the amount which under the evidence the plaintiff is entitled to recover. There was evidence as to one of these questions at least, although no estimate of the value, but the law imports a nominal value at least in case of the death being wrongful, so these answers were harmless unless the general verdict was wrong, and even if they had stated definite amounts they could not well be used by the court in fixing the amount of recovery if the general verdict for defendant should not stand, because they were only required to be answered by the jury if their verdict should be for the plaintiff.

As to the answer to the second question, which was "We do not know," the general rule is that it is equivalent to no answer. Besides, this question is substantially the same as 1 (c) except that it was not conditionally submitted. There was substantially no evidence to support a definite answer, and the answer might be proper even as to measure of damages implied by law in case of wrongful injury. To set aside this answer, as urged by appellant, would leave all parties, including the courts, in the same state of mind as the jury—not knowing the amount of such particular financial loss sustained on account of the wrongful act. The answer does not say there was no loss, and to strike it out as requested would not seriously affect either party. We therefore see no error in overruling the motion to strike out the answers to questions 1 and 2.

The matter involved in the motion to strike out the answer to question 18 is the vital issue in this appeal. It is the answer on which hangs the matter of contributory negligence. This question and answer are as follows:

"Q. 18. What, if anything, did George Robertson or his driver, Hubert Anderson, do that contributed to the injury and death of George Robertson? A. We find that he stopped at an angle and did not pull out far enough to the side of the road."

A brief outline of the situation and movement of the two trucks is necessary to a complete understanding of the answer of the jury to this eighteenth question and other questions. Robertson, the deceased, was the owner of a new truck, and his son-in-law, Hubert Anderson, was driving it. The wife of Anderson, who was the daughter of Robertson, was seated in the truck beside her husband, and Robertson was riding on the right running board from the post office at Simpson to his home on U. S. Highway No. 40, a distance of about one fourth mile, between 8 and 8:30 o'clock on the morning of June 22, 1934. This truck had a bed on it which was about seven feet wide and twelve feet long, extending about six feet back of the rear axle. The truck of the defendant was following the truck of the deceased northerly on U. S. 40. It was a similar truck in most ways, except that it had dual hind wheels and the body of it extended out about eight inches on the sides beyond the wheels. It was heavily loaded with merchandise. There was a bend in the road which was 950 feet south of the residence of Robertson. There was a difference in the evidence as to where the Robertson truck was traveling on this highway shortly before the accident, whether near

the center of the road or on the east side of the mat. The mat was 22 or 24 feet wide, and in addition there were shoulders on each side. The Robertson truck stopped in order to let Robertson off at his residence, which was on the west side of the highway. The evidence shows that he stepped around the front of the car and stopped at the left window to talk to his daughter and son-in-law and was standing there two or three minutes before the accident occurred. The evidence shows that defendant's truck was going north behind the Robertson truck at the rate of about fifteen miles per hour, and it turned to the left when it approached the place where the Robertson truck was, in order to pass it, and that the right side of the body of the defendant's truck struck the left rear corner of the Robertson truck causing the latter to turn over, and in the accident Robertson was killed.

Plaintiff alleged in his amended petition many and various acts of negligence on the part of the defendant, such as excessive speed, driving in a reckless, negligent and wanton manner, not watching and observing the road to avoid the striking of vehicles and driving in a drowsy and sleepy manner with a heavily loaded truck.

The amended answer of the defendant consisted of a general denial and that the negligence of Robertson, the deceased, and his agent, Hubert Anderson, the driver of his truck, contributed to and caused the injuries and damages of which the plaintiff complains, and further—

". . . that said car was being driven in front of the automobile operated by the defendant, when suddenly without signal or warning of any kind or character, said Hubert Anderson stopped the said truck, pulling it diagonally across the road, with the back of said truck extending across the right hand, or east, side of said highway, in front of the defendant, who was traveling in a northerly direction; that said automobile was stopped so suddenly in front of the defendant, that although he did all in his power to avoid said collision by turning his said truck to the left and applying his brakes, it was impossible to avoid striking the rear end of the truck owned by the said George L. Robertson and operated by the said Hubert Anderson.

"Defendant further states that the said George L. Robertson was riding upon the running board of said automobile, knew that the driver thereof intended to stop, and gave no sign or signal to the defendant, whom he was following immediately behind said automobile upon which he was riding; and although he knew that said automobile upon which he was riding intended to stop, he permitted his agent, Hubert Anderson, who was then and there authorized to drive said automobile, to suddenly stop said automobile diagonally across said highway, without signal or warning of his intention so to do. If either the said George L. Robertson or his agent, Hubert Anderson, had given

any sign or signal that they intended to stop their said automobile, or if they had not suddenly stopped and parked the same diagonally across the highway, or if said George L. Robertson had been in said automobile instead of riding on the running board of said automobile immediately before said collision, said collision would not have occurred and the said George L. Robertson would not have been injured."

The serious differences in the evidence concerned the path taken by the Robertson truck, whether along the east side of the highway or near the center thereof, and whether or not it turned to the east and suddenly stopped and whether or not the defendant could or should have seen it turn or stop, if it did so turn or stop. The answers to the other questions are referred to by both parties as assisting in determining the real meaning of the answer to question 18. The other questions and answers, except the first two and the eighteenth, are as follows:

"Q. 3. Did either George Robertson or Hubert Anderson give any sign or signal of their intention to stop the Robertson truck? A. No.

"Q. 4. Was the Robertson truck standing parallel with the east edge of the mat, or at an angle with the east edge of the mat at the time of the collision? A. At an angle.

"Q. 5. How wide was the mat at the point on the highway where the collision occurred? A. Twenty-two to twenty-four feet.

"Q. 6. Did the driver of the Robertson truck turn from the center of the highway and suddenly stop? A. No.

"Q. 7. Was the defendant's truck about fifty feet behind the Robertson truck when it stopped? A. No.

"Q. 8. If you find the defendant was guilty of any negligence which caused the collision, state specifically the acts of negligence of which you find him guilty. State fully. A. He did not pull over far enough to the left side of the road or soon enough.

"Q. 9. How far did defendant Lanoue have an unobstructed view of the road looking north toward the Robertson truck immediately after turning the corner on U. S. 40, south of the place of the accident? A. 950 feet.

"Q. 10. What, if anything, prevented defendant Lanoue from avoiding striking the Robertson truck? A. Negligence.

"Q. 11. Could defendant Lanoue have stopped his truck in time to have avoided the accident? A. Yes.

"Q. 12. If you answer the above question 'No,' then state the reason that he could not stop. A.—

"Q. 13. Could the defendant Lanoue have turned to the left and missed the Robertson truck? A. Yes.

"Q. 14. What was the rated capacity of the Lanoue truck? A. Two and one half tons by state license.

"Q. 15. What was the weight of the load on the Lanoue truck? A. Over six tons.

"Q. 16. Do you find that the accident occurred because Lanoue misjudged the distance and thought the truck was moving? A. Yes.

"Q. 17. Where relative to the center of the highway was the extreme left wheel of the Robertson truck? A. Two to five feet."

Both parties recognize the answer to question 17 as meaning "east" of the center and as if the answer was intended to be "two to five feet east."

There can be no question but that the jury intended to find the defendant guilty of negligence, but if the answer to question 18 shows that they found the deceased or his agent, Anderson, guilty of contributory negligence that would supersede and dispense with the negligence of the defendant as far as liability is concerned.

Appellant insists that the answer to question 18 was not among the acts of contributory negligence pleaded by defendant in his answer, and the fact that the jury found that the defendant could have stopped and avoided the accident or could have turned to the left and missed the Robertson truck, and also the doubt expressed by the defendant as to whether the Robertson truck had stopped should make contributory negligence impossible. Among the allegations above quoted from the answer is found the following which is substantially the same as the statement contained in the answer to question 18: "stopped the said truck, pulling it diagonally across the road, with the back of said truck extending across the right-hand, or east, side of said highway in front of the defendant." Two other allegations charge the plaintiff with stopping the truck diagonally across the road and one other with stopping it in front of the defendant. The fact that defendant could have stopped and avoided the accident or could have turned to the left and missed the Robertson truck, as found by the jury, constitutes negligence on the part of the defendant. There is no question about there being negligence on the part of the defendant. If he had not been negligent there would probably have been no collision, but the question is, Did the deceased or his agent contribute to such negligence? or, as question 18 reads, What, if anything, did they do that contributed to the injury and death? The answer shows the extent of such contribution.

Appellant cites *Matassarin v. Street Railway Co.*, 100 Kan. 119, 163 Pac. 796, where it is said that the negligence of a person which merely furnishes a situation or condition where an independent, unforeseen and unanticipated agency causes his injury will not bar a recovery. This was in a case where a passenger stepped off a

streetcar without waiting for it to completely stop and it "shot forward" just as he "turned loose of the car" and he fell. This ruling was applied to an automobile collision case at an intersection of streets where the defendant was found to have been negligent and the plaintiff was also found not to have sounded his horn before entering the intersection and to have been driving faster than six miles an hour in crossing the intersection, and the court held the negligence of the plaintiff "was a contributing cause of the accident." (*Martin v. Weigand,* 113 Kan. 611, 215 Pac. 1023.) The facts in the latter case are more nearly applicable to the findings in the case at bar.

We think the answer of the jury to question 18 plainly showed contributory negligence and was within the allegations of such negligence made in the answer of defendant, and that such answer is not inconsistent with the general verdict nor the other findings of the jury.

This conclusion of the finding and existence of contributory negligence on the part of the plaintiff necessarily disposes of two other assignments of error, the refusal to make an order that the plaintiff was entitled to judgment on the findings of the jury notwithstanding the verdict and the refusal to grant a new trial limited to the question of the amount of damages.

Appellant cites *Tucker v. Lyons,* 111 Kan. 741, 208 Pac. 547, and *Burkholder v. Cosand,* 144 Kan. 143, 58 P. 2d 53, as to refusal to direct verdicts, but in neither of those cases was contributory negligence established or found. *Stotts v. Taylor,* 130 Kan. 158, 285 Pac. 571, is also cited by appellant, where a pedestrian was injured by an automobile when there was sufficient room on the highway for the automobile to have safely passed the pedestrian, but the driver of the automobile was held under the evidence to have been negligent and the pedestrian was found by the jury not to have been negligent.

Appellant assigns as error the refusal of the trial court to submit to the jury two questions requested by the plaintiff as to whether or not the Robertson truck was standing still at the time of the collision and if so how long it had been standing still before the collision. Conceding that these questions were relevant and pertinent to the issues, they were in effect included in questions 4 and 16 that were submitted, and besides the record shows that the last ten of the eighteen that were submitted were requested by the plaintiff, which was the limit allowed by G. S. 1935, 60-2918, except in the

discretion of the trial court. Consequently there was no error in declining the request as to these two questions.

The plaintiff requested the giving of nineteen instructions, and assigns as error the failure to give sixteen of them. Plaintiff also assigns as erroneous six of the instructions given by the trial court. Time and space do not permit a detailed discussion of the merits or defects of these several instructions, but a careful examination has been made as to each and all of them as applied to the evidence given in the case, and we fail to find any serious errors or omissions in the instructions given, and because most of the matters in the instructions requested were covered by and included in those given we have reached the conclusion that the action of the court in giving and refusing to give instructions was not erroneous.

We find no error in the introduction of testimony or in overruling the motion for a new trial.

The judgment is affirmed.