No. 33,524

Huron Claggett, *Appellee,* v. Phillips Petroleum Company and Frank Fisher, *Appellants.*

(73 P. 2d 1015)

Opinion filed December 11, 1937.

*Lee Judy,* of Kansas City, for the appellants.
*Joseph Cohen,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for injuries sustained when plaintiff was hit by one of defendant's trucks. After the jury returned a verdict for plaintiff, answering special questions in favor of the defendants, the court sustained the motion of plaintiff for a new trial. Defendants appeal.

After the verdict the attention of the trial court was called to the inconsistencies between the general verdict and the answers to special questions and to the conduct of some of the jurors, especially one who was shown to have made statements as to his personal knowledge of the scene of the accident, also to conduct of the jury which tended to show that the answer to one of the special questions had been reached by the jury by means of a quotient verdict. The trial court considered all these matters and expressed itself as not being satisfied with the result of the trial. Under such circumstances this court will not review the action of the trial court in allowing a new trial. (See *Hiattville State Bank v. Land*, 125 Kan. 108, 263 Pac. 1073. See, also, *Carlgren v. Saindon*, 129 Kan. 475, 283 Pac. 620.)

Ordinarily the above would dispose of this appeal. However, at the close of the evidence of plaintiff, defendants demurred to it on the ground that it did not show facts sufficient to prove a cause of action against defendants and in favor of plaintiff. The argument is that the evidence failed to show that defendants were guilty of any negligence, but, on the other hand, did show that plaintiff was guilty of contributory negligence that would prevent him from recovering.

The petition alleged that North Third street was an arterial highway running north and south in Kansas City, Kan., and intersected New Jersey avenue; that on or about the 7th day of December, about six o'clock in the evening, plaintiff was crossing from the northwest corner of the intersection of New Jersey avenue and North Third street for the purpose of going to the east side of North Third street, in a prudent manner, and that while he was attempting to negotiate the crossing he was run into by a motor truck owned by the defendant company and operated by its employee, knocking him down, and causing him injuries. The petition alleged that plaintiff's injuries were caused by the negligence of defendants in that the defendant Fisher drove the truck at a high and dangerous rate of speed, that is, in excess of twenty-five miles per hour; that the truck was driven without having it equipped with sufficient lights on the front thereof; that the defendants violated an ordinance of the city as follows:

"The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic-control signs, or at any point where a pedestrian tunnel or overhead causeway has been provided."

The petition further alleged that defendants were negligent in driving the truck in violation of another ordinance of the city, which provided that no person should drive a vehicle at a greater speed than was reasonable and prudent; that defendants were negligent in not having their truck equipped with headlights sufficient to reveal objects 150 feet ahead; that defendants saw, or by the exercise of reasonable care and diligence could, and should, have seen, the plaintiff in a position of imminent peril from which he could not extricate himself, and could have avoided striking him by slackening the speed, turning aside or stopping the truck; that the defendants failed and neglected to turn their truck aside, stop it or slacken the speed thereof; that the defendants failed to sound any warning; that they failed and neglected to keep a sharp lookout for pedestrians crossing North Third street at this point and particularly this plaintiff; and that they failed and neglected to keep their truck under control.

After a general denial and an allegation as to another action which was pending in Missouri, with which we are not interested here, the answer alleged that if the plaintiff was injured at all his injuries were caused wholly by his own carelessness in that he walked directly in front of the truck; that the truck had lights on it and he could have seen it if he had been looking; that he was not in possession of all his faculties and that his negligence in stepping in front of the truck caused his injuries.

The reply was a general denial.

The first witness saw the accident. He testified that the plaintiff was coming across the street; that he was walking in a natural manner, not fast; that he holloed to plaintiff, but plaintiff acted as though he did not hear; that at that time the truck was about twenty-five feet, or something like that, away from plaintiff, the truck going north; that then plaintiff did turn around and look and before he could do anything the truck had hit him; that he (the witness) had driven motor cars about three years; his best judgment was that the motor car was going from forty to forty-five miles an hour; that it looked as if the bumper and the left fender hit the plaintiff and that the truck looked as though it was just about the center of the street; that the left wheels of the truck were about a foot over the center of the street.

The next witness testified that the man that was struck was going across the street walking east, kind of diagonally across the street, kind of northeast. This witness testified further:

"Q. Tell the jury what he was doing that made you think he was trying to get out of the way. A. He was going across to the east side of the street, and the truck was coming at a fast speed, and he started back, and he went back again, and the truck hit him. He started back to the west."

The witness testified also that there was nothing unusual about the manner in which plaintiff walked across Third street; that she had ridden in automobiles for about twenty years and was able to judge with a fair degree of accuracy as to the speed of a car; that she imagined this truck was going about forty miles an hour; and that it went about twenty or twenty-five feet after it struck the man, and that the truck driver got out of the truck and then got back on the truck and backed it up; and that it dragged plaintiff about twenty or twenty-five feet after it struck him; that immediately before the truck hit plaintiff it swerved to the east and that the man was moving east and then the truck swerved back to the west before it struck him; that she did not hear any warning of any kind.

There was other testimony to the same effect from other witnesses.

The plaintiff testified that he tried to cross Third street; that when he first saw the lights of the truck it was about 175 feet away; that he thought he had sufficient time to cross and looked the other way and was going on across. He also testified:

"A. And I got to the middle of the street, why it was so close to me that I looked back and started to stop to see which way it was going, and he swerved this way. . . . He swerved to the—I stopped, and when he swerved—he swerved east. . . . And then he swerved back. When he swerved back in a direction west, why I started to go on across, and he was so close on to me I could not get out of the way."

Plaintiff further testified that he had walked about twenty-five feet angling across from the corner when the accident happened; that he looked for cars coming from the north going south after he stepped off the curb, and that was after he had made the observation to the south; and the next time he observed the car that struck him was when it was so close on him "and he was swerving that I did not have time to get out of the way, and that I was near the middle of the street and that the truck did not swerve over four or five feet and then it cut in towards me and I didn't have time to get out of the way." He testified further "that the truck was so close to him that he tried to get out of the way and kind of ran and tried to get out of the way of it before, but by the swerving he did

not know which way it was going, and that it hit him and that was the last he remembered."

It would add nothing to this opinion to set out more of the details of the testimony here. There was testimony contrary to this on the part of defendants. On the consideration of a demurrer to the evidence this court cannot weigh conflicting evidence. (See *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 485, and cases cited.)

Defendants make an argument that the evidence of plaintiff to which reference has been made shows plaintiff to have been guilty of contributory negligence which would prevent his recovery as a matter of law. In *Prewett v. Sholl*, 120 Kan. 158, 242 Pac. 149, this court said:

"In passing upon the demurrer the court was required to view the evidence given in the light most favorable to plaintiff and allow all reasonable inferences in her favor." (p. 162.)

There was evidence here that plaintiff looked both ways before he stepped into the street; that he thought he could get across; that the truck was going forty or forty-five miles an hour; that he was struck near the middle of the street; that the truck swerved four or five feet and then cut in toward him.

Not much would be added to this opinion by a discussion of other cases where pedestrians have been hit by trucks and cars. They all have peculiar facts. The case of *Dicks v. Wilson*, 143 Kan. 716, 56 P. 2d 760, has some features in common with this case. There the pedestrian was hit by a taxicab. An eyewitness said she was looking straight ahead when she was hit. The defendant argued that such conduct constituted contributory negligence. This court said:

"Such a rule would make it impossible for a pedestrian to look in the direction he was walking to see whether he was stepping into a hole in the pavement or stumbling over a brick." (p. 718.)

To the same effect is *Stotts v. Taylor*, 130 Kan. 158, 285 Pac. 571. See, also, *Moore v. Wichita Yellow Cab Co.*, 136 Kan. 99, 12 P. 2d 736.

It should be observed here that the case of plaintiff was not founded on the last-clear-chance doctrine, as is argued by defendants. When we give full credence to the evidence of plaintiff and draw from it all reasonable inferences favorable to his contentions, we conclude that the demurrer of the defendants to his evidence was properly overruled.

The judgment of the trial court is affirmed.